# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**,

      **Plaintiff,**

      v.        Case No. 04-CR-255

**KENNETH HILL,**

      **Defendant.**

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN ON THE DEFENDANT'S MOTION TO SUPPRESS

On October 26, 2004, the grand jury returned a two-count indictment against the defendant, Kenneth Hill ("Hill"). Count one charges Hill with possession of certain firearms, after being convicted of a crime punishable by imprisonment for a term exceeding one year. Count two charges Hill with possessing a firearm that was not registered to him.

Hill filed a motion to suppress statements that he made to law enforcement officials on May 30, 2004 and on June 2, 2004. As grounds for his motion to suppress, Hill claims that law enforcement did not honor his right to remain silent after it was invoked. On May 4, 2005, this court held an evidentiary hearing to address Hill' motion. Hill appeared in person and by his attorney, Patrick K. Cafferty. The government appeared by Assistant United States Attorney Mario F. Gonzales. Milwaukee Police Detective Robert Menzel ("Detective Menzel") testified on behalf of the government and was the only witness. Hill's motion has been fully briefed and is now ready for resolution.

## I. Facts

At the evidentiary hearing, Detective Menzel presented testimony as to the events relevant to Hill's motion. His testimony, largely undisputed, is the court's basis for the following statement of facts.

Hill was arrested on May 30, 2004, pursuant to a State of Wisconsin arrest warrant. Detective Menzel, who was assigned to the south side narcotics division at that time, intended to interview Hill in connection with alleged drug trafficking activities on the day of his arrest. Detective Menzel began the interview by reading Hill <u>Miranda</u> warnings, as set forth on a card issued by the State of Wisconsin. Hill responded that he understood his rights after the entire card had been read.

Next, Detective Menzel asked Hill if Hill knew why he was there. Hill said that he believed the interview would regard municipal warrants. Such was not the case. When Menzel advised Hill that he wished to question him about drug trafficking activities and the recent search of Hill's residence, Hill became extremely angry. Hill stood up, raised his voice, and stated "fucking take me back upstairs, cause I ain't saying shit." (Hrg. Ex. 1 ¶ 2.). Based on Hill's statements, as well as his demeanor, the interview quickly terminated. Detective Menzel ceased his questioning and proceeded to take Hill to be re-searched before returning him to his cell. While waiting to enter the prisoner processing area, Hill initiated conversation with Detective Menzel. Hill stated that Menzel was "full of shit because the police don't have witness to testify against him." Detective Menzel replied "don't be so sure as to who you can and cannot trust." Hill then claimed that the police of kill everyone, that he has been surveilling police headquarters to gain recognition of undercover police vehicles, and that he would beat any charges brought against him because he was too smart to get caught. No other conversation took place, Hill was re-searched, and transferred to his cell.

Three days later, on June 2, 2004, FBI agents contacted Hill in the Milwaukee County Jail and asked to interview him in regard to a gang investigation. The agents gave Hill Miranda warnings, obtained Hill's waiver, and proceeded to take an incriminating statement from Hill.

## II. Hill's Motion to Suppress

Hill claims that his comments to Detective Menzel while waiting to enter the prisoner processing area and his subsequent statements to the FBI agents should be suppressed. As grounds, Hill claims that no further interrogation efforts should have been made after his right to silence was invoked. In particular, Hill submits that Detective Menzel's statement "don't be so sure as to who you can and cannot trust" was intended to trigger further conversation with Hill relevant to the investigation and, thus, warrants suppression of all statements made thereafter.

## III. Analysis

In the opinion of this court, Detective Menzel's statement was not intended to trigger an incriminating statement by Hill and does not constitute interrogation. It is clear that Detective Menzel did not want to continue the interview with Hill at the time he made that statement. In fact, Detective Menzel testified that, by then, Hill's anger had risen to the point that Detective Menzel felt his personal safety was a concern. In addition, a desire to discuss the investigation further belies the fact that Detective Menzel immediately honored Hill's right to remain silent and was taking Hill back to his jail cell, precisely as Hill requested. Moreover, it is not the case that Detective Menzel was prompting discussion with Hill. Quite the opposite, Hill initiated conversation with Detective Menzel. Detective Menzel simply responded to Hill's statement and did so in very general terms. The Fifth Amendment does not render law enforcement officials mute and was not violated under these circumstances.

3

In the opinion of this court, this conclusion resolves Hill's motion as to the statements he made prior to entering the processing area <u>and</u> the statements Hill made to the FBI agents on June 2, 2004. In regard to the FBI statement, Hill does not allege that <u>Miranda</u> warnings given immediately prior to that statement were improper or that his waiver was involuntary. Instead, Hill's sole basis for suppression is his characterization of Detective Menzel's statement as an attempt to re-engage interrogation efforts. Accordingly, details as to the subsequent interview with FBI agents were not discussed at the evidentiary hearing, and the court will recommend that Hill's motion be denied in its entirety.

Moreover, even if Detective Menzel's comment did violate the Fifth Amendment, that does not mean that Hill's subsequent statement to FBI agents should be suppressed. On the contrary, those statements are admissible under the seminal Supreme Court decision of <u>Michigan v. Mosley</u>, 423 U.S. 96 (1975). (Gov. Resp. at 2-4.). In <u>Mosley</u>, the Court held that the Fifth Amendment does not impose "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation." <u>Mosley</u>, 423 U.S. at 102. Such an interpretation of the Fifth Amendment "would transform the <u>Miranda</u> safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." <u>Id</u>.

In determining whether an accused's right to remain silent has been scrupulously honored, where the accused is interrogated after previously invoking his right to remain silent, the court evaluates four factors: (1) the degree to which police pursued further interrogation once the suspect invoked his right to silence; (2) whether the police resumed questioning only after a reasonable amount of time passed; (3) whether the suspect was then provided with a fresh set of warnings before

4

being re-interrogated; and (4) whether the second interrogation concerned a crime that had not been a subject of the earlier interrogation. Id. at 104-07; United States v. Gillaum, 372 F.3d 848, 856 (7th Cir. 2004); United States v. Wyatt, 179 F.3d 532, 538 (7th Cir. 1999). Here, these factors favor admissibility of the statement made to FBI agents— the FBI agents questioned Hill after several days after he invoked his right to remain silent; gave Hill a second set of Miranda warnings, and questioned Hill in regard to charges from the ones that Detective Menzel intended to discuss. Furthermore, as discussed previously, Detective Menzel's comment was brief and was in response to conversation initiated by Hill. Thus, even assuming the comment violated Hill's right to remain silent, the degree of further interrogation would be considered slight under the first Mosley factor.

For all of the reasons discussed herein, the court will recommend that Hill's motion to suppress be denied in its entirety.

**IT IS THEREFORE RECOMMENDED** that Hill's motion to suppress be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 27th day of June, 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge

5